UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:18-CR-076-SDJ |
| | § | |
| MARITZA CLAUDIA FERNANDA | § | |
| LORZA RAMIREZ a.k.a. "Claudia" | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Maritza Claudia Fernanda Lorza Ramirez's Motion to Vacate the Jury Verdict Pursuant to Federal Rule of Criminal Procedure 29. (Dkt. #80). The Government has responded in opposition. (Dkt. #85). Ramirez has not filed a reply, and her deadline to do so has passed. Having considered the motion, the record, and the applicable law, the Court concludes that the motion should be **DENIED**.

### I. BACKGROUND

On May 10, 2018, a federal grand jury indicted Ramirez on charges of obstruction of justice and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 1503; corruptly persuading another person to be absent from an official proceeding, in violation of 18 U.S.C. § 1512(b)(2)(D); and conspiracy to corruptly persuade another person to be absent from an official proceeding, in violation of 18 U.S.C. § 1512(k). (Dkt. #1). The indictment alleged that Ramirez assisted narcotic traffickers in delaying and circumventing the extradition process from Colombia to the United States by deploying a deceptive scheme involving a 2016 Peace Accord between the Colombian government and the Revolutionary Armed Forces of Colombia. Law-

1

enforcement officials arrested Ramirez in Colombia, and she was subsequently extradited to the United States based on one count of the indictment: obstruction of justice and aiding and abetting that offense.

Ramirez proceeded to a jury trial. (Dkt. #63). Following the Government's case-in-chief, Ramirez moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The Court denied that motion. (Dkt. #74 at 2). Shortly after that, the jury found Ramirez guilty of obstruction of justice and aiding and abetting, in violation of 18 U.S.C. §§ 1503(a) and 2.

Ramirez now renews her motion for judgment of acquittal under Rule 29(c). In the alternative, she asks the Court to vacate the jury's verdict and grant her a new trial under Rule 33(a).

## II. Discussion

Ramirez moves for a judgment of acquittal or, in the alternative, for a new trial. The Court addresses each motion in turn and concludes that neither has merit.

### A. Motion for Judgment of Acquittal

The Court first addresses Ramirez's motion for a judgment of acquittal. Ramirez argues that the Government presented insufficient evidence for the jury to find that she obstructed justice in violation of Section 1503(a).

It is true that courts have authority to set aside a guilty verdict and enter an acquittal. FED. R. CRIM. P. 29(c)(2). But the "jury's constitutional role in deciding criminal trials leaves little room for judicial second-guessing." *United States v. Crittenden*, No. 18-50635, 2022 WL 3453540, at *3 (5th Cir. Aug. 18, 2022) (en banc).

Review of jury verdicts is, to put it mildly, "quite limited." *See Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

A "court can acquit a defendant found guilty by a jury only if 'no rational juror could have found guilt beyond a reasonable doubt.'" *Crittenden*, 2022 WL 3453540, at *3 (quoting *United States v. Sanjar*, 876 F.3d 725, 744 (5th Cir. 2017)). This standard "does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). The factfinder is "free to choose among reasonable constructions of the evidence," and "it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* (quotations omitted).

Here, the jury found beyond a reasonable doubt that Ramirez obstructed justice in violation of Section 1503(a). The "elements of obstruction of justice under 18 U.S.C. § 1503 are: (1) a judicial proceeding was pending; (2) the defendant knew of the judicial proceeding; and (3) the defendant acted corruptly with the specific intent to influence, obstruct, or impede that proceeding in its due administration of justice." *United States v. Fisch*, 851 F.3d 402, 407 (5th Cir. 2017) (cleaned up). Ramirez does not dispute that judicial proceedings were pending and that she knew of them. Her attack is twofold. First, Ramirez contends that the Government failed to prove that she intended to obstruct justice, including by failing to establish that she prevented witnesses named in the indictment from cooperating in cases pending

against them in federal courts. (Dkt. #80 at 2–3). Second, Ramirez argues that the Government did not prove that she "intended to corruptly influence a government official." (Dkt. #80 at 3).

As for Ramirez's first argument, she ignores that a "defendant's specific intent to obstruct justice can be proven by showing the defendant's endeavors had the natural and probable effect of interfering with the due administration of justice." *Fisch*, 851 F.3d at 407 (quotations omitted). "An *un* successful 'endeavor' to obstruct justice violates section 1503; justice need not actually have been obstructed." *Id.* (cleaned up).

Ramirez concedes that the jury heard evidence that "she sought to mislead or even lie to extraditable people that she could prevent their extradition." (Dkt. #80 at 4). Indeed, several witnesses from Colombia who had pending drug cases in American courts testified that Ramirez falsely told them that, for a (high) price, she could prevent their extradition to the United States for prosecution. Ramirez also stipulated during trial that she is familiar with the American federal criminal justice system; understands the important role cooperation plays in that system; knows that information gathered from cooperation furthers investigations and prosecutions; and understands that cooperating defendants may get sentencing benefits because of their cooperation. (Dkt. #72). Despite this evidence, Ramirez argues that she in no way obstructed justice or attempted to do so because she was just "tricking or duping defendants into paying her money" and knew the cooperating defendants would be extradited anyway. (Dkt. #80 at 4). The Court is not persuaded.

That Ramirez knew the cooperating defendants would ultimately be extradited only proves that she lied to them. The cooperating defendants testified that they did not know Ramirez was lying when they paid her money to prevent their extradition. Naturally, if the cooperating defendants believed they were shielded from prosecution in the United States, a reasonable juror could find they would be less likely to cooperate with American authorities. Thus, a reasonable juror could find that Ramirez's false representations had the probable effect of interfering with the administration of justice.

But there is more. The jury heard evidence that Ramirez prevented cooperation efforts between one of the drug-trafficking defendants, Gerardo Obando Montano (a.k.a. "Checo"), and Drug Enforcement Administration ("DEA") authorities. DEA agent Guillermo Fuentes testified that Checo, while confined at La Picota Prison in Colombia, contacted the DEA to discuss cooperation in the federal case pending against him in the United States. The prosecutor in the drug-trafficking case had given Checo a proffer letter, so Agent Fuentes and another DEA agent arranged an interview with Checo at La Picota. Fuentes testified that during the interview, Ramirez abruptly entered the room, claimed that Checo was one of her clients, and instructed Checo to leave and say nothing else. Checo listened to Ramirez and refused to cooperate with the DEA until after he was extradited.

In her motion, Ramirez contends that she interrupted the La Picota meeting to "sav[e] [Checo] from lying to federal agents." (Dkt. #80 at 6). That is one construction of the evidence. But a jury "may choose among any reasonable

5

constructions of the evidence." *United States v. Masha*, 990 F.3d 436, 442 (5th Cir. 2021). And this jury could have reasonably chosen the Government's construction—that Ramirez interrupted the meeting and directed Checo not to talk to the DEA because she wanted him to believe she had the ability to prevent his extradition altogether, because that was the only way she would get paid.

Ramirez also asserts "that the cooperating witnesses lied repeatedly, long after they obtained American counsel and were in the United States," about "the money they ha[d] in order to avoid paying forfeiture judgments or to speed up their case[s]." (Dkt. #80 at 5). To be sure, the jury heard evidence that some of the cooperating defendants lied about their assets in paperwork and statements they made to the U.S. Probation Office. But the conclusion that Ramirez attempts to draw from this evidence makes little sense. According to Ramirez, "there was no way that she could have obstructed the[] cooperation" of these witnesses because she knew they "were liars, at least about their wealth," and therefore "would not be permitted to cooperate." (Dkt. #80 at 5). Ramirez cites no evidence that supports her alleged knowledge of those lies. But according to her own motion, the cooperating defendants' lies about their financial status were made "long after they obtained American counsel and were in the United States." (Dkt. #80 at 5). So Ramirez would not have known about any of those "lies" at the time of the offense conduct, which occurred while these witnesses were still in Colombia. Thus, while the evidence Ramirez relies on casts doubt on the credibility of the cooperating witnesses, it fails to undermine the jury's finding that she acted corruptly with the specific intent to obstruct justice.

6

*See United States v. Deville*, 278 F.3d 500, 505 (5th Cir. 2002) (stressing that "all reasonable inferences and credibility choices must be made in favor of the jury verdict" (quotation omitted)).

Turning to Ramirez's "second point," she argues that the Government failed to establish that she "intended to corruptly influence government officials." (Dkt. #80 at 5) (quotation omitted). The intent to "corruptly influence government officials" is not an element of obstruction of justice under Section 1503(a). *See Fisch*, 851 F.3d at 407. That's why this Court, in its jury instructions on that offense, said nothing about whether Ramirez intended to corruptly influence government officials. (Dkt. #73 at 11–12). Nor was the jury required to make such a finding to convict Ramirez of obstructing justice in violation of Section 1503(a). So this argument also fails.

Viewed in the light most favorable to the verdict, the evidence was sufficient for the jury to find beyond a reasonable doubt that Ramirez obstructed justice in violation of 18 U.S.C. § 1503. Thus, the Court concludes that Ramirez is not entitled to a judgment of acquittal under Rule 29.

**B. Motion for New Trial**

The Court next addresses Ramirez's motion for new trial under Rule 33. Ramirez argues that the Court should grant a new trial because the verdict "was against the cumulative weight of the evidence." (Dkt. #80 at 3).

District courts have authority to vacate a verdict and grant a new trial if "justice so requires." FED. R. CRIM. P. 33(a). Broadly speaking, this power is exercised in two situations. The first is when "error infects the trial—perhaps the erroneous admission or exclusion of evidence, inflammatory comments by a lawyer, or faulty

7

jury instructions." *Crittenden*, 2022 WL 3453540, at *4. The second is when "the court believes the evidence weighs 'heavily against the verdict.'" *Id.* (quoting *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997)).

This case involves the second situation, where a court is put "in the unusual position of weighing the evidence and assessing the credibility of witnesses." *Id.* (cleaned up). The court cannot "entirely usurp the jury's function" and set aside the verdict merely because it would have ruled the other way. *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005). Rather, the court's "power to grant a new trial based on a different assessment of the evidence must be 'exercised with caution' and 'invoked only in exceptional cases.'" *Crittenden*, 2022 WL 3453540, at *4 (quoting *United States v. Sinclair*, 438 F.2d 50, 51 n.1 (5th Cir. 1971) (Wisdom, J.)). The Fifth Circuit recently clarified the governing standard:

> If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the court may set aside the verdict and grant a new trial. The power to grant a new trial on this ground should be invoked only in exceptional cases, where the evidence weighs heavily against the verdict.

*Id.* at *5 (cleaned up).

This is not one of the "exceptional cases" in which the Court has discretion to vacate the jury's verdict by ordering a new trial. As discussed above, the Government presented sufficient evidence for the jury to find that Ramirez acted corruptly with the specific intent to influence, obstruct, or impede a judicial proceeding in its due administration of justice. The Government's case "did not depend on farfetched inferences or solely on the testimony of a cooperating codefendant." *Id.* at *6 (citations

8

omitted). And the key witnesses were not "obviously incredible." *Id.* Nor has Ramirez pointed to any "meaningful exculpatory evidence" or "a significant risk that the verdict turned on improper factors." *Id.* Because Ramirez has failed to show that the jury's verdict was against the great weight of the evidence or that a miscarriage of justice may have resulted, the Court has no basis to grant a new trial.

### III. CONCLUSION

For the foregoing reasons, Ramirez's Motion to Vacate the Jury Verdict Pursuant to Federal Rule of Criminal Procedure 29, (Dkt. #80), is **DENIED**.

**So ORDERED and SIGNED this 8th day of September, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE